# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | | |
|---|---|---|
| **AMY DECKER, by next friend** | ) | |
| **GINA HAGE and GINA HAGE,** | ) | |
| | ) | |
| Plaintiffs/Appellants, | ) | Carroll Circuit No. 3464 |
| | ) | |
| **v.** | ) | |
| | ) | Appeal No. 02A01-9709-CV-00242 |
| **CARROLL ACADEMY, MARY MAYS,** | ) | |
| **JENNIFER SALYER, UNKNOWN** | ) | |
| **EMPLOYEES OR AGENTS OF** | ) | |
| **CARROLL COUNTY HEALTH** | ) | |
| **DEPARTMENT, CARROLL COUNTY** | ) | |
| **HEALTH DEPARTMENT, CARROLL** | ) | |
| **COUNTY, TENNESSEE,** | ) | |
| **COMMISSIONER NANCY MENKE OF** | ) | |
| **THE TENNESSEE DEPARTMENT OF** | ) | |
| **HEALTH, and THE ATTORNEY** | ) | |
| **GENERAL OF THE STATE OF** | ) | |
| **TENNESSEE,** | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

<div style="border:1px solid black">

# FILED

**May 26, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

</div>

APPEAL FROM THE CIRCUIT COURT OF CARROLL COUNTY
AT HUNTINGDON, TENNESSEE

THE HONORABLE JULIAN P. GUINN, JUDGE

For the Defendants/Appellees,
Carroll Academy, Mary Mays,
Jennifer Salyer, Carroll County,
Tennnessee, and Carroll County,
Health Department:

Robert T. Keeton, Jr.
Huntingdon, Tennessee

For the Defendants/Appellees,
Commissioner Nancy Menke,
the Attorney General of the State
of Tennessee, and Unknown
Employes or Agents of Carroll County
Health Department:

John Knox Walkup
Ronald W. McNutt
Nashville, Tennessee

For the Plaintiffs/Appellants:

Landon W. Meadow
Gregory D. Smith
Clarksville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

**OPINION**

This case involves a constitutional challenge to Tennessee Code Annotated § 68-34-107, which allows distribution of birth control information and supplies to minors without parental consent or notification. The mother of a minor child to whom birth control was distributed filed a lawsuit against, among others, the minor's school and the county. The trial court granted the defendants' motions to dismiss, and the plaintiffs appeal. We affirm.

Plaintiff, Amy Decker, was a student at Defendant, Carroll Academy. At the time, Amy was fourteen years old. She was enrolled at Carroll Academy pursuant to an order of the juvenile court, after revocation of her probation for minor offenses. At Carroll Academy, she participated in a sex education class. In connection with the class, Amy asked for information about birth control and indicated that she was sexually active and needed birth control. Amy said she had been exposed to venereal disease and asked for medical treatment. An employee of Carroll Academy, Jennifer Salyer, took Amy to the Defendant, Carroll County Health Department, where a pap smear was administered and Amy was given birth control pills. Amy's parents were not notified of her visit to the Carroll County Health Department, nor did they consent to the pap smear or the birth control pills.

Carroll Academy and the Carroll County Health Department acted pursuant to Tennessee Code Annotated § 68-34-107, which provides that:

> Contraceptive supplies and information may be furnished by physicians to any minor who is pregnant, or a parent, or married, or who has the consent of such minor's parent or legal guardian, or who has been referred for such service by another physician, a clergy member, a family planning clinic, a school or institution of higher learning, or any agency or instrumentality of this state or any subdivision thereof, or who requests and is in need of birth control procedures, supplies or information.

Tenn. Code Ann. § 68-34-107 (1996). All policies of the Carroll County Health Department are made by the Tennessee Department of Health. The policy of the Tennessee Department of Health is to implement the Family Planning Act of 1971, which contains the above statute. *See* Tenn. Comp. R. & Regs. 1200-16-1-.02 (1975).

Subsequently, Amy's mother, Plaintiff Gina Hage, discovered the birth control pills. The record does not establish whether Amy ever took any of the pills. Hage later withdrew Amy from Carroll Academy and enrolled her in a private school.

A lawsuit was then filed by Amy Decker, by Hage as her next friend, and by Hage individually, against Carroll Academy; Mary Mays, the director of the Academy; Jennifer Salyer,

the employee who transported Amy to the Health Department; Carroll County, Tennessee; Carroll County Health Department; unknown employees/agents of Carroll County Health Department; the Tennessee Department of Health and Commissioner Nancy Menke, in her official capacity; and the Tennessee Attorney General. The Plaintiffs claimed that the Defendants' conduct violated Hage's federal and state constitutional privacy rights to direct the education and upbringing of her daughter, her federal and state parental liberty rights to the nurture, education, and well being of her daughter, the free exercise clause of the First Amendment of the United States Constitution, the federal and state due process and equal protection clauses of the Fourteenth Amendment, and the Religious Freedom Restoration Act of 1993. They sought an injunction enjoining the Defendants from acting pursuant to the statute, on behalf of the Plaintiffs "and those who are similarly situated." However, class certification was not sought. Plaintiffs sought monetary damages as well as declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. The complaint does not clearly set forth the injuries received and relief sought in regard to Plaintiff Amy Decker other than to allege a battery against her by the health clinic for not having parental consent to conduct the pap smear.

The Defendants filed motions to dismiss on several grounds. The Tennessee Attorney General, on behalf of the Tennessee Department of Health, Commissioner Nancy Menke and unknown state employees or agents of the Carroll County Health Department, and the Attorney General argued that the doctrine of sovereign immunity bars a claim against these defendants. They asserted that they are not "persons" under 42 U.S.C. § 1983 and are not subject to suit pursuant to Section 1983. In addition, they contended that the Plaintiffs' claim is barred by the statute of limitations because they failed to plead with specificity the date on which the incident occurred or when Hage discovered that Amy was taken to Carroll County Health Department. The Attorney General also argued for the constitutionality of Tennessee Code Annotated § 68-34-107, citing *Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980), for the proposition that parents' constitutional rights under the United States Constitution are not violated when a minor decides to use contraceptives without parental notification.

In addition, the Attorney General maintained that Tennessee Code Annotated § 68-34-107 is constitutional pursuant to the Tennessee Constitution. The Attorney General argued that under *Cardwell v. Bechtol*, 724 S.W.2d 739, 749 (Tenn. 1987), a fourteen year old minor is presumed to have capacity to seek medical treatment. In addition, the statute recognizes Amy's right not to

2

procreate as recognized in *Davis v. Davis*, 842 S.W.2d 588, 600 (Tenn. 1992). Addressing the free exercise of religion claim, the Attorney General argued that the statute does not implement governmental coercion contrary to religious belief, which is necessary to sustain a claim under the free exercise clause.

In response, the Plaintiffs stipulated that all claims against the Tennessee Health Department should be barred under the doctrine of sovereign immunity, as well as the claim for monetary damages against Commissioner Menke. The Plaintiffs also stipulated that the claim against all Defendants based on the Religious Freedom Restoration Act should be dismissed pursuant to the holding in *City of Boerne v. Flores*, 521 U.S. 507, 117 S. Ct. 2157, 2172, 138 L. Ed. 2d 624 (1997), which held the Act unconstitutional.

Defendants Carroll Academy, Mary Mays, Jennifer Salyer, and the Carroll County Health Department filed a motion to dismiss as well, arguing that they have qualified immunity from suit because they acted pursuant to "known statutory authority." Carroll County, Tennessee did not file a motion to dismiss.

The Plaintiffs' claims against the Tennessee Department of Health and the claim for monetary damages against Commissioner Menke were dismissed pursuant to stipulation. The Plaintiffs' claim under the Religious Freedom Restoration Act was also dismissed. All other parties remained, namely, Carroll Academy; Mary Mays, the director of the Academy; Jennifer Salyer, the employee who transported Amy to the Health Department; Carroll County, Tennessee; Carroll County Health Department; unknown employees/agents of the Carroll County Health Department; Commissioner Nancy Menke of the Tennessee Department of Health; and the Tennessee Attorney General. The Plaintiffs continued to seek monetary damages against these parties, as well as injunctive and declaratory relief, except that no monetary damages were sought against Commissiner Menke.

The trial court granted the motions to dismiss, and dismissed the complaint as to all Defendants. In a succinct order, the trial court stated simply:

> It is the decision of the court that Tenn. Code Ann. § 68-34-107 and the Tennessee Department of Health's policy in providing birth control pills and medical treatment to minors is constitutional. Therefore, the Motions to Dismiss on behalf of all Defendants are well-taken and the Plaintiffs' action is dismissed.

From this order, the Plaintiffs now appeal.

3

Plaintiffs raise two issues on appeal. First, Plaintiffs argue that the statute violates their right to freedom of religion under the Tennessee Constitution as well as the Federal Constitution because it encourages adolescents to engage in premarital sex, which is contrary to Hage's religious beliefs. Second, Plaintiffs reassert their claim that the statute at issue, Tennessee Code Annotated § 68-34-107,[1] is unconstitutional under both the federal and state constitutions because it unreasonably interferes with the fundamental privacy right of parents to direct the education and upbringing of their children. On appeal, the Plaintiffs do not dispute that the Legislature may lawfully authorize the distribution of birth control to minors, or that schools may lawfully transport a minor to a physician or to the Health Department for this purpose, even without parental consent. Rather, they argue that, if this is done, the federal and state constitutions mandate that the parents be <u>notified</u> of the actions of the school and the Health Department.

First we must address the finality of the judgment in this case. The trial court granted the Defendants' motions to dismiss and dismissed the Plaintiffs' lawsuit. Defendant Carroll County, Tennessee did not file a motion to dismiss. Therefore, the trial court dismissed the claims against Carroll County *sua sponte*. The trial court has the authority to dismiss a complaint *sua sponte* in the absence of a motion to dismiss when the complaint fails to state a claim upon which relief may be granted. *See Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn. 1975); *see also Cockrill v. Everett*, 958 S.W.2d 133, 135 (Tenn. App. 1997). Courts entertaining the possibility of dismissing a complaint *sua sponte* for failure to state a claim upon which relief can be granted should construe the pleadings liberally in the plaintiff's favor. *See Huckeby*, 521 S.W.2d at 571. The trial court's implicit dismissal of Carroll County in this case was within its power, and therefore the judgment from which the Plaintiffs appeal is deemed a final judgment.

The Attorney General filed three memoranda of law to be considered by the trial judge in support of its various motions to dismiss and on behalf of the Tennessee Department of Health, Nancy Menke, and unknown state employees of the Carroll County Health Department. Defendants Carroll Academy, Mary Mays, Jennifer Salyer and the Carroll County Health Department also filed

---

[1] On appeal, the Plaintiffs also assert that the policy of the Tennessee Department of Health, implementing the Family Planning Act of 1971, including Tennessee Code Annotated § 68-34-107, is unconstitutional. *See* Tenn. Comp R. & Regs. 1200-16-1-.02 (1975). However, the Tennessee Department of Health is not a party to this appeal.

4

a memorandum of law in support of their motion to dismiss. They attached affidavits and depositions. The depositions were not made part of the record on appeal.

Rule 12.03 of the Tennessee Rules of Civil Procedure provides that "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . " Tenn. R. Civ. P. 12.03. Therefore, the Defendants' motions to dismiss would be considered motions for summary judgment, under Rule 12.03, because the trial court considered evidence outside the pleadings. *See Gardner v. Insura Property & Cas. Ins. Co.*, 956 S.W.2d 1, 2 (Tenn. App. 1997).

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's dismissal, treated as an order of summary judgment, is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

In Tennessee, constitutional issues should not be addressed "unless the issue's resolution is absolutely necessary for determination of the case and the rights of the parties." *Haynes v. City of Pigeon Forge*, 883 S.W.2d 619, 620 (Tenn. App. 1994). Statutes are entitled to a strong

presumption in favor of their constitutionality. *See Dennis v. Sears, Roebuck & Co.*, 223 Tenn. 415, 446 S.W.2d 260, 263 (1969). Doubts about a statute's constitutionality should be resolved in favor of constitutionality. *See Marion County Bd. of Comm'rs v. Marion County Election Comm'n*, 594 S.W.2d 681, 684 (Tenn. 1980).

First we review the Plaintiffs' claim that the Defendants' actions amount to an infringement of a mother's right to instill her religious beliefs in her children. The free exercise clause of the First Amendment of the U.S. Constitution guarantees religious freedom: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. The threshold requirement for a claim under this provision is whether the challenged governmental action creates a substantial burden on the exercise of the plaintiff's religion. *See Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 699, 109 S. Ct. 2136, 2148, 104 L. Ed. 2d 766 (1989). For a burden to be substantial, it must be coercive or compulsory in nature. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 447-51, 108 S. Ct. 1319, 1324-26, 99 L. Ed. 2d 534 (1988). The United States Supreme Court uses a three-part inquiry to determine whether a statute violates the Establishment Clause: (1) whether the statute has a secular purpose, (2) whether the principle or primary effect of the statute advances or inhibits religion, and (3) whether the statute fosters excessive governmental entanglement with religion. *See Lemon v. Kurtzman*, 403 U.S. 602, 612-13, 91 S. Ct. 2105, 2111, 29 L. Ed. 2d 745 (1971). Though it has not been adopted by a majority of the U.S. Supreme Court, Justice O'Connor would also adopt an "endorsement inquiry," namely an inquiry as to " 'whether a reasonable observer would view such longstanding practices as a disapproval of his or her particular religious choices, in light of the fact that they serve a secular purpose rather than a sectarian one and have largely lost their religious significance over time.' " *Martin v. Beer Bd. for Dickson*, 908 S.W.2d 941, 950-51 (Tenn. App. 1995) (quoting *County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 631, 109 S. Ct. 3086, 3121, 106 L. Ed. 2d 472 (1989) (O'Connor, J., concurring)). The United States Supreme Court later held that laws which are neutral and of general application, that are not specifically intended to regulate religion, "need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U. S. 520, 531, 113 S. Ct. 2217, 2226, 124 L. Ed. 2d 472 (1993).

6

The Tennessee Constitution also recognizes and protects the rights of its citizens to practice the religion of their choice free from state interference. *See* Tenn. Const. art. I, § 3. The religious freedom provision of the Tennessee Constitution is akin to the First Amendment of the U.S. Constitution, but, "[i]f anything, our own organic law is broader and more comprehensive in its guarantee of freedom of worship and freedom of conscience." *Carden v. Bland*, 199 Tenn. 665, 672, 288 S.W.2d 718, 721 (1956). There are two complementary concepts of religious freedom: the freedom to believe and the freedom to act. *See Wolf v. Sundquist*, 955 S.W.2d 626, 630 (Tenn. App. 1997). "The freedom to believe is absolute; while the freedom to act is subject to reasonable control for the protection of others." *Id.* at 630-31. Tennessee follows the *Lemon v. Kurtzman* inquiries, supplemented by Justice O'Connor's endorsement inquiry, to determine whether a statute violates article I, § 3 of the Tennessee Constitution. *See Martin*, 908 S.W.2d at 951.

In this case, we must determine whether the statute at issue creates a substantial burden on Plaintiff Gina Hage's exercise of religion. For the burden to be deemed substantial, it must be coercive or compulsory in nature. *See Lyng*, 485 U.S. at 447-51, 102 S. Ct. at 1324-26. Tennessee Code Annotated § 68-34-107 is not compulsory in nature; it merely authorizes a physician to provide contraceptives to a minor who has been referred by an entity, such as a school, or who has requested and is in need of contraceptives. Participation by the minor is voluntary, and parental consent is neither required nor prohibited. Under the analysis in *Lemon v. Kurtzman*, the statute is secular in purpose. *See Lemon*, 403 U.S. at 612-13, 91 S. Ct. at 2111. The primary effect of the statute, to authorize physicians to provide contraceptives to minors even in the absence of notification to the parents, neither advances nor inhibits Gina Hage's religious beliefs or her ability to communicate her beliefs to her daughter. *Id.* Likewise, the Health Department program did not prohibit Hage from teaching her religious beliefs to Amy. "[I]ncidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to <u>coerce</u> individuals into acting contrary to their religious beliefs, [do not] require the government to bring forward a compelling justification for its otherwise lawful actions." *Lyng*, 485 U.S. at 450-51, 108 S. Ct. at 1326 (emphasis added). "Merely because the [Plaintiff] find[s] the program objectionable does not render it violative of [her] right to the free exercise of [her] religion." *Alfonso v. Fernandez*, 606 N.Y.S.2d 259, 268 (N.Y. App. Div. 1993). Finally, the statute, merely authorizing such actions by physicians, does not foster excessive governmental entanglement with religion. *See*

*id.* Therefore, the statute does not rise to the level of an infringement of the Plaintiffs' rights under the free exercise clause of the First Amendment of the U.S. Constitution guaranteeing religious freedom. U.S. Const. amend. I.

Under the Tennessee Constitution, the analysis under *Lemon v. Kurtzman* is followed, with the addition of the "endorsement inquiry" advocated by Justice O'Connor. *See Martin*, 908 S.W.2d at 951. Under this inquiry, the statute at issue, merely authorizing physicians to provide contraceptives to minors, cannot be viewed as a "disapproval of [the Plaintiff's] religious choices." *County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 631, 109 S. Ct. 3086, 3121, 106 L. Ed. 2d 472 (1989) (O'Connor, J., concurring). Therefore, the statute does not rise to the level of an infringement of the Plaintiff's right to religious freedom under the Tennessee Constitution. *See* Tenn. Const. art I, § 3.

The Plaintiffs argue next that the Tennessee statute, and the Health Department policy implementing it, violate the Plaintiff mother's right to privacy under the federal and state constitutions by unreasonably interfering with her fundamental privacy right to direct the education and upbringing of her daughter.

Under the U.S. Constitution, the right to privacy stems from the concept of liberty bestowed by the Fourteenth Amendment: " 'No state shall . . . deprive any person of life, liberty, or property, without due process of law.' " *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 626, 67 L. Ed. 1042 (1923) (quoting U. S. Const amend XIV.). "[T]he concept of liberty protects those personal rights that are fundamental, and is not confined to the specific terms of the Bill of Rights." *Griswold v. Connecticut*, 381 U.S. 479, 486, 85 S. Ct. 1678, 1683, 14 L. Ed. 2d 510 (1965) (Goldberg, J., concurring). Included in the federal right to privacy is the right of reproductive freedom: "If the right of privacy means anything, it is the right of the *individual*, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S. Ct. 1029, 1038, 31 L. Ed. 2d 349 (1972).

A right to privacy under the Tennessee Constitution was recognized by the Tennessee Supreme Court in *Davis v. Davis*, 842 S.W.2d 588, 600 (Tenn. 1992). Although the right to privacy is not explicitly mentioned in the Tennessee Constitution, it is supported by the concept of liberty found throughout the Tennessee Declaration of Rights, such as the guarantee of freedom of worship,

the prohibition of unreasonable searches and seizures, the guarantees of freedom of speech and the press, and the prohibition of the quartering of soldiers. *See id.* at 600. The *Davis* court stated that it had "no hesitation" in finding a right to privacy from these liberty clauses. *Id.* Furthermore, the court found that, under Tennessee constitutional law, "the right of procreation is a vital part of an individual's right to privacy. Federal law is to the same effect." *Id.* The right to procreational autonomy, although not absolute, includes the right to procreate and the right to avoid procreation. *See id.* at 601.

The United States Supreme Court has recognized that the right to privacy extends to minors. *See Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74-75, 96 S. Ct. 2831, 2843-44, 49 L. Ed. 2d 788 (1976). The state has "somewhat broader authority to regulate the conduct of children than that of adults," but federal case law clearly reflects a constitutionally protected right of privacy for minors. *Doe v. Irwin*, 615 F.2d 1162, 1166 (6th Cir. 1980) (citing cases). The right to obtain contraceptives is included within a minor's right of privacy. *See id.* (citing *Carey v. Population Servs., Int'l*, 431 U.S. 678, 692-93, 97 S. Ct. 2010, 2019-20, 52 L. Ed. 2d 675 (1977)). In *Carey*, a plurality of the Court indicated that federal law would proscribe a blanket prohibition of the distribution of contraceptives to minors, as well as a blanket requirement of parental consent:

> Since the State may not impose a blanket prohibition, or even a blanket requirement of parental consent, on the choice of a minor to terminate her pregnancy, the constitutionality of a blanket prohibition of the distribution of contraceptives to minors is a fortiori foreclosed. The State's interests in protection of the mental and physical health of the pregnant minor, and in protection of potential life are clearly more implicated by the abortion decision than by the decision to use a nonhazardous contraceptive.

*Carey*, 431 U.S. at 694, 97 S. Ct. at 2021.

Juxtaposed against the minor's right to privacy, including the right to obtain contraceptives, is the fundamental liberty interest of parents to rear their children as they see fit, also protected under the Fourteenth Amendment of the U.S. Constitution. *See Meyer*, 262 U.S. at 399, 43 S. Ct. at 626; *see also Hawk v. Hawk*, 855 S.W.2d 573, 578 (Tenn. 1993). The right of parents to be protected from unwarranted government intrusion in the rearing of their children is supported by federal case law. *See Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S. Ct. 549, 554-55, 54 L. Ed. 2d 511 (1978); *Wisconsin v. Yoder*, 406 U.S. 205, 232-34, 92 S. Ct. 1526, 1541-42, 32 L. Ed. 2d 15 (1972); *Prince v. Massachusetts*, 321 U.S. 158, 166-67, 64 S. Ct. 438, 442, 88 L. Ed. 2d 645 (1944); *Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 534-35, 45 S. Ct. 571,

573, 69 L. Ed. 2d 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 626, 67 L. Ed. 1042 (1923).  Similarly, considering "Tennessee's historically strong protection of parental rights and the reasoning of federal constitutional cases," the Tennessee Supreme Court has held that "parental rights constitute a fundamental liberty interest under Article I, Section 8 of the Tennessee Constitution."  *Hawk*, 855 S.W.2d at 579.  Under the Federal Constitution, an interference with parental rights may be unconstitutional if it is coercive or compulsory in nature, such that "the governmental action is mandatory and provides no outlet for the parents, such as where refusal to participate in a program results in a sanction or in expulsion."  *Curtis v. School Comm. of Falmouth*, 652 N.E.2d 580, 586 (Mass. 1995).  Mandatory attendance at public school, for example, does not rise to the level of a constitutional violation.  *See id.* at 587.

We first analyze the Plaintiffs' privacy claims under the Federal Constitution.  *Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980), involved a family clinic that performed physical examinations and distributed contraceptives, including birth control pills, without parental notification or consent.  Visits to the family planning clinic by minors and other patients were voluntary.  The clinic's services related to minors were not advertised.  The parents of several minors who received contraceptives with no parental notification brought suit alleging that the actions of the clinic violated their constitutional rights.

The Sixth Circuit recognized that the minor's right to privacy includes the right to obtain contraceptives.  *See id.* at 1166.  It also recognized the right of parents under the Fourteenth Amendment "to the care, custody and nurture of their children" and the state's right to protect minor females "from the physical and emotional hazards of unwanted pregnancies."  *Id.* at 1167.  The Sixth Circuit distinguished previous Supreme Court cases finding unconstitutional interference with parental rights by noting that the fundamental difference between those cases and the *Irwin* case was that, in the previous cases, the state was either requiring or prohibiting some activity.  *See id.* at 1168.  In contrast, the *Irwin* court did not find the policy of the family planning clinic coercive or compulsory.  *See id.*  The Sixth Circuit stated:

> The State of Michigan, acting through the Center and defendants, has imposed no compulsory requirements or prohibitions which affect rights of the plaintiffs.  It has merely established a voluntary birth control clinic.  There is no requirement that the children of the plaintiffs avail themselves of the services offered by the Center and no prohibition against the plaintiffs' participating in decisions of their minor children on issues of sexual activity and birth control.  The plaintiffs remain free to exercise their traditional care, custody and control over their

unemancipated children. . . . [W]e can find no deprivation of the liberty interest of parents in the practice of not notifying them of their children's voluntary decisions to participate in the activities of the center.

*Id.* at 1168. The Sixth Circuit noted that the U.S. Supreme Court had not "squarely decided" whether a state may require parental notice before birth control is provided to unemancipated minors. *Id.* at 1167. Based on the court's conclusion that there was no unconstitutional interference with the plaintiffs' parental rights, the court declined to consider whether the state had a compelling state interest or whether the parental rights outweighed the right of the minor children to obtain contraceptives. *See id.* at 1169.

In analogous circumstances, other courts have found no unconstitutional interference with parental rights where condoms are distributed without parental authorization or notification. *See Parents United for Better Schs, Inc. v. School Dist. of Phila. Bd. of Educ.*, 148 F.3d 260, 277 (3d Cir. 1998) (holding that the voluntary school program for condom distribution "did not offend parental rights regarding the custody and care of their children"); *Planned Parenthood Ass'n of Utah v. Matheson*, 582 F. Supp. 1001, 1009 (D. Utah 1983) (striking down law requiring parental notification for contraceptive distribution at family planning clinic because "parental notification laws in the abortion context support the conclusion that the state may not impose a blanket parental notification requirement on minors seeking to exercise their constitutionally protected right to decide whether to bear or to beget a child"); *Curtis v. School Comm. of Falmouth*, 652 N.E.2d 580, 584-89 (Mass. 1995) (finding that school condom-availability program "lacks any degree of coercion or compulsion in violation of the plaintiffs' parental liberties, or their familial privacy"). *But see Alfonso v. Fernandez*, 606 N.Y.S.2d 259, 261 (N.Y. App. Div. 1993) (holding that school condom-distribution program that lacked a way for parents to opt their children out of the program violated parental rights to rear their children as they see fit, but did not violate free exercise of religion).

Hage argues in part that the Tennessee statute, and the Health Department policy implementing it, which allows physicians to provide contraceptives to minors without parental notification, encourages her daughter and other minors to engage in premarital sexual activities in violation of Hage's religious beliefs, which usurps and undercuts her parental authority. This is similar to the argument rejected by the United States Supreme Court in *Carey v. Population Servs. Int'l*, 431 U.S. 678, 97 S. Ct. 2010, 52 L. Ed. 2d 675 (1977). *See Alfonso*, 606 N.Y.S.2d at 274 (Eiber, J. dissenting). In *Carey*, the state argued that the availability of contraceptives to minors

11

would lead to increased sexual activity among adolescents, which the state sought to prevent. The plurality opinion summed up this argument as the idea "that minors' sexual activity may be deterred by increasing the hazards attendant on it." *Carey*, 431 U.S. at 694, 97 S. Ct. at 2021. The plurality noted, however, that this argument is untenable because " '[i]t would be plainly unreasonable to assume that (the State) has prescribed pregnancy and the birth of an unwanted child (or the physical and psychological dangers of an abortion) as punishment for fornication.' " *Id.* (quoting *Eisenstadt v. Baird*, 405 U.S. 438, 448, 92 S. Ct.1029, 1036, 31 L. Ed. 2d 349 (1972).

Based on *Doe v. Irwin* and other analogous case law, considering the noncompulsory nature of the statute, we conclude that the absence of a parental notification requirement in the statute at issue, and the Health Department policy implementing it, do not rise to the level of an unconstitutional interference with the parent's right "to the care, custody and nurture of their children as a liberty interest" under the Fourteenth Amendment of the U.S. Constitution. *Irvin*, 615 F.2d at 1167. The Tennessee statute is not compulsory in nature; the participation of the minor is voluntary, and notification to parents is neither required nor prohibited. Physicians are not required to provide birth control to minors who request and need contraceptives; the statute merely authorizes them to do so. The statute does not prohibit a parent from any conduct in the raising of her child, nor does it require any conduct of a parent. As in *Irwin*, even if the minor chooses not to notify her parent, the Plaintiff mother in this case "remain[s] free to exercise . . . traditional care, custody and control" over her daughter. *Irwin*, 615 F.2d at 1168. Consequently, under federal caselaw, since the statute is not compulsory in nature, we must find that the absence of a parental notification requirement in the statute is not an unconstitutional interference with the Plaintiff's parental rights under the U.S. Constitution.

Next we must determine whether the Tennessee statute at issue and the Health Department policy implementing it violate the Plaintiffs' right to privacy under the Tennessee Constitution. As noted above, Tennessee recognizes that "parental rights constitute a fundamental liberty interest under Article I, Section 8 of the Tennessee Constitution." *Hawk*, 855 S.W.2d at 579. This finding is based on "Tennessee's historically strong protection of parental rights and the reasoning of federal constitutional cases." *Id.* Thus, the Tennessee Constitution "protects the right of parents to care for their children without unwarranted state intervention." *Id.*

12

The Tennessee Supreme Court has also held under the Tennessee Constitution that "the right of procreation is a vital part of an individual's right to privacy." *Davis*, 842 S.W.2d at 600. The *Davis* Court found that "a right to procreational autonomy is inherent in our most basic concepts of liberty." *Id.* at 601. It described the "right of procreational autonomy" as "composed of two rights of equal significance--the right to procreate and the right to avoid procreation." *Id.* This right to "procreational autonomy" under the Tennessee Constitution has been applied to minors in decisions involving abortion. *See McGlothlin v. Bristol Obstetrics, Gynecology and Family Planning, Inc.*, No. 03A01-9706-CV-00236, 1998 WL 65459, at *4 (Tenn. App. Feb. 11, 1998).

Thus, the parent and the minor child each have constitutionally protected privacy interests to consider. The State has an interest as well, set forth in the Family Planning Act of 1971 that includes the statute at issue. Tennessee Code Annotated § 68-34-107 is located within the Act. Several policy reasons support the enactment of the Family Planning Act and are set forth:

> (1) Continuing population growth either causes or aggravates many social, economic and environmental problems, both in this state and in the nation;
> (2) Contraceptive procedures, supplies, and information, and information as to and procedures for voluntary sterilization, are not sufficiently available as a practical matter to many persons in this state;
> (3) It is desirable that inhibitions and restrictions be eliminated so that all persons desiring and needing contraceptive procedures, supplies, and information shall have ready and practicable access thereto; . . .

Tenn. Code Ann. § 68-34-103 (1996). Furthermore, the legislature found that enactment of the Family Planning Act was "necessary for the immediate preservation of the public peace, health, and safety." Tenn. Code Ann. § 68-34-110 (1996).

Thus, the legitimate interests of the parent, the minor and the State must be considered. *Davis v. Davis* notes that conflicting constitutional interests may be resolved by considering the "positions of the parties, the significance of their interests, and the relative burdens that will be imposed by differing resolutions." *Davis*, 842 S.W.2d at 603.

As noted above, under federal caselaw, the statute at issue, and the Health Department policy implementing it, do not constitute an impermissible infringement of the parent's liberty interest to raise her child under the Federal Constitution. The question becomes, then, whether the parent's right of privacy to raise her child under the Tennessee Constitution differs from the concomitant federal right so significantly that the statute and the implementing policy are unconstitutional under the Tennessee Constitution.

13

The Tennessee Constitution can provide stronger protection than that provided by the United States Constitution. *See State v. Middlebrooks*, 840 S.W.2d 317, 338 (Tenn. 1992). The Tennessee Supreme Court, the court of last resort in interpreting the Tennessee Constitution, is "always free to expand the minimum level of protection mandated by the federal constitution." *Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993) (quoting *Doe v. Norris*, 751 S.W.2d 834, 838 (Tenn. 1988)).

This has, on occasion, been done. *See Campbell v. Sundquist*, 926 S.W.2d 250, 261 (Tenn. App. 1996) (right of privacy under Tennessee Constitution protects against government intrusion into private homosexual contact between consenting adults); *see also City of White House v. Whitley*, No. 01A01-9612-CH-00571, 1997 Tenn. App. LEXIS 428 (Tenn. App. June 18, 1997) (Koch, J., dissenting) (citing *State v. Marshall*, 859 S.W.2d 289, 290-91, 294-95 (Tenn. 1993) (holding that the state constitution provides greater protection for free speech than the First and Fourteenth Amendments); *State v. Black*, 815 S.W.2d 166, 189, 192-193 (Tenn. 1991) (holding that the state constitution provides different standards for determining what constitutes cruel and unusual punishment); *State v. Jacumin*, 778 S.W.2d 430, 435-36 (Tenn. 1989) (holding that Tenn. Const. art. I, § 7 requires different standards for obtaining a search warrant than does the Fourth Amendment); *Miller v. State*, 584 S.W.2d 758, 760 (Tenn. 1979) (holding that the ex post facto clause in Tenn. Const. art. I, § 11 provides greater protection than the ex post facto clause in U.S. Const. art. I, § 10, cl. 1)).

Tennessee courts cannot, however, interpret the Tennessee Constitution in such a manner that it encroaches federally protected rights under the U.S. Constitution. *See Middlebrooks*, 840 S.W.2d at 338. Thus, the Tennessee Constitution cannot be interpreted in such a manner that the parent's liberty interest in raising her child as she sees fit under the Tennessee Constitution encroaches on the minor's right to "procreational autonomy" under the U.S. Constitution. *See Davis*, 842 S.W.2d at 600-01 (discussing right to "procreational autonomy" under both federal and state constitutions).

Moreover, provisions under the Tennessee Constitution are generally interpreted in a manner that is consistent with the analogous federal constitutional provisions. "[O]rdinarily the two constitutions should be construed alike where possible." *State v. Jennette*, 706 S.W.2d 614, 620 (Tenn. 1986). Tennessee courts have indicated a tendency to construe the right of privacy under the Tennessee Constitution as consonant with the parallel federal constitutional provisions. *See Hawk*,

14

855 S.W.2d at 580; *Davis*, 842 S.W.2d at 600 ("the right of procreation is a vital part of an individual's right to privacy. Federal law is to the same effect."); *Planned Parenthood of Middle Tenn. v. Sundquist*, No. 01A01-9601-CV-00052, 1998 WL 467110, at **20-21 (Tenn. App. Aug. 12, 1998); *McGlothlin*, 1998 WL 65459, at *4. *But see Campbell*, 926 S.W.2d at 261.

In this case, Gina Hage asserts her right to instill her moral and religious beliefs in Amy, and to make decisions regarding her medical care and her use of contraceptives. She asserts in the complaint in this case that the statute and the attendant Health Department policy have "a detrimental effect upon the Plaintiff's ability to instill in her child certain sincerely held religious values regarding chastity and morality." She objects to the distribution of contraceptives and the administering of medical procedures such as a pap smear to Amy without notification to her.

Under Tennessee case law, the parent's constitutional liberty interest in rearing her child is framed in terms of protection against "interference" and "intervention" by the State:

> Implicit in Tennessee case and statutory law has always been the insistence that a child's welfare must be threatened before the state may intervene in parental decision-making.
>
> * * *
>
> [N]either the legislature nor a court may properly intervene in parenting decisions absent significant harm to the child from those decisions.

*Hawk*, 855 S.W.2d at 580, 581. As noted above, the statute at issue is neither coercive nor compulsory in nature. Participation by the minor and the physician is voluntary; notification to the parent is neither required nor prohibited. Indeed, it is the lack of compulsion in the statute that the Plaintiff protests; she argues that the statute, in order to pass constitutional muster, must affirmatively require notification to the parent.

We are not asked to decide whether it would be advisable or beneficial for the legislature to amend the statute to include a requirement of parental notification. Rather, we are asked to determine whether the Tennessee Constitution mandates that parents be notified if contraceptives are distributed to their minor children, in light of the fact that the U.S. Constitution does not contain such a requirement. In other words, "The question . . . is not whether a state may impose a condition which would limit the right of privacy of the minors whose interests are involved. Rather, it is whether the Constitution requires such a condition." *Irwin*, 615 F.2d at 1169.

Based on federal case law interpreting parental rights under the Federal Constitution, the inclination of Tennessee courts to interpret Tennessee constitutional provisions consistent with

15

similar federal provisions, and caselaw from the Tennessee Supreme Court describing parental rights under the Tennessee Constitution as protection against state "intervention" into parental child-rearing decisions, we must conclude that the Tennessee Constitution does not mandate that the statute authorizing physicians to prescribe contraceptives to minors also compels parental notification. Therefore, the state statute at issue, and the Health Department policy implementing it, do not contravene the Tennessee Constitution.

This holding obviates the necessity to weigh against the parental rights the minor's constitutional right to "procreational autonomy" and the State's stated reasons for enacting the statute. It should also be noted that we are not presented with the issue of whether a parental notification requirement, if enacted by the legislature, would impinge upon a minor's procreational rights under the Tennessee or Federal Constitution.

Plaintiff Gina Hage also argues that it was unlawful for her daughter to receive medical treatment, *i.e.* a pap smear, without parental consent or notification. Parental consent usually must be obtained before a minor child can receive medical treatment. *See Parents United for Better Schs, Inc. v. School Dist. of Pa. Bd. of Educ.*, 148 F.3d 260, 275 (3d Cir. 1998). Under Tennessee common law, a minor's ability to obtain medical treatment without parental consent is governed by the Rule of Sevens. *See Cardwell v. Bechtol*, 724 S.W.2d 739, 749 (Tenn. 1987). Minors under the age of seven have no capacity for consent, minors between the ages of seven and fourteen have a rebuttable presumption of no capacity, and minors between fourteen and eighteen are entitled to a rebuttable presumption of capacity. *See id.*; *Roddy v. Volunteer Med. Clinic, Inc.*, 926 S.W.2d 572, 576 (Tenn. App. 1996). Amy Decker was fourteen years old when the events at issue in this case took place. States cannot presume the immaturity of girls under the age of fifteen. *City of Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 440, 103 S. Ct. 2481, 2497, 76 L. Ed. 2d 687 (1983), *overruled on other grounds by Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992). The record contains no indication that the Plaintiffs presented or sought to present evidence rebutting the presumption of Amy's capacity to consent to the medical treatment performed on her. *See McGlothlin v. Bristol Obstetrics, Gynecology and Family Planning, Inc.*, No. 03A01-9706-CV-00236, 1998 WL 65459, at *5 (Tenn. App. Feb. 11, 1998); *Roddy*, 926 S.W.2d at 576. Therefore, we cannot find that the provision of medical treatment in this case was unlawful.

Plaintiffs argue that the statute at issue is overly broad in that it authorizes family planning clinics to provide contraceptives to minors regardless of age. Because Hage's parental rights were not violated as to her fourteen-year-old daughter in this case, it is unnecessary to address the situation in which a child younger than fourteen obtains contraceptives under the statute.

In sum, we find that the judgment in this case is final because the trial court had authority to dismiss the complaint as to all Defendants. We conclude that Tennessee Code Annotated § 68-34-107, and the Health Department policy implementing it, do not rise to the level of an infringement of the Plaintiff's right to religious freedom under the U.S. Constitution and the Tennessee Constitution. We also hold that the statute and the policy do not violate the Plaintiff's parental rights under the federal and state constitutions. In addition, the Plaintiffs failed to proffer any evidence rebutting the presumption that the fourteen-year-old minor had the capacity to consent to the medical treatment administered in this case. Therefore, we conclude that the trial court did not err in granting the Defendants' motions and dismissing the Plaintiffs' complaint.

The decision of the trial court is affirmed.  Costs are taxed to Appellants, for which execution may issue if necessary.

_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**ALAN E. HIGHERS, J.**

_____
**DAVID R. FARMER, J.**