# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

JANET L. WOLF and )
GERALD S. BOWKER, )
individually and as representatives )
of all similarly situated individuals, )
)
        Plaintiffs/Appellants, )
)
)
VS. )
)
) Davidson Circuit
DON SUNDQUIST, in his official ) No. 94C-4094
capacity as Governor of the State of )
Tennessee; JOHN KNOX WALKUP, )
in his official capacity as Attorney ) Appeal No.
General of the State of Tennessee; ) 01A01-9505-CV-00209
VICTOR S. JOHNSON, III, in his )
official capacity as District Attorney )
General for the 20th Judicial District )
for the State of Tennessee, and )
DAN M. ALSOBROOKS, in his official )
capacity as District Attorney General )
for the 23rd Judicial District of the State )
of Tennessee, and as representatives )
of all District Attorneys General in the )
State of Tennessee, )
)
        Defendants/Appellees. )

**FILED**

April 23, 1997

Cecil W. Crowson
Appellate Court Clerk

### APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE

### THE HONORABLE HAMILTON V. GAYDEN, JR., JUDGE

For the Plaintiffs/Appellants:

Irwin Venick
DOBBINS & VENICK
Nashville, Tennessee

For the Defendants/Appellees:

Jerry L. Smith
Deputy Attorney General
Nashville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves the right of persons unalterably opposed to the death penalty to serve as jurors in capital murder cases. Two persons who had been excused for cause in separate capital cases filed suit in the Circuit Court for Davidson County, seeking a declaration that excusing prospective jurors who, as a matter of religious conscience, could not consider imposing the death penalty violated the prospective jurors' constitutional rights. The trial court dismissed the complaint, and the jurors appealed. We have determined that the practice of excluding jurors whose religious principles prevent them from considering the death penalty regardless of the law and the evidence is not an unconstitutional religious test, does not violate the jurors' constitutionally protected freedom of religion, and does not unconstitutionally discriminate against these jurors. Accordingly, we affirm the judgment.

## I.

Janet L. Wolf is an ordained Methodist minister who resides in Nashville. She was summoned for jury duty in 1990 and was among the panel of prospective jurors in the first degree murder trial of William C. Dugger for the 1989 murder of Robin Boswell in Percy Warner Park.[1] During the voir dire, the assistant district attorneys general questioned the prospective jurors about their ability to consider imposing the death penalty because the State had announced its intention to seek the death penalty against Mr. Dugger. In response to these questions, Ms. Wolf stated that she was philosophically, morally, and religiously opposed to the death penalty and that she could not set aside her personal opposition to the death penalty, even if the law required her to, because she believed that "it's always wrong." The trial court granted the State's challenge for cause because "her views would prevent or substantially impair the performance of her duties as a juror in accordance with the jury instructions and oath."

---

[1]Mr. Dugger was found guilty of first degree murder and received a life sentence. *State v. Dugger,* App. No. 01C01-9102-CR-00034, 1991 WL 165822, at *1 (Tenn. Crim. App. Aug. 30, 1991), *perm. app. denied* (Tenn. Feb. 3, 1992).

Gerald S. Bowker resides in New Johnsonville and is a member of the Southern Baptist Church. In October 1991, he was summoned for jury duty by the Circuit Court for Humphreys County and was one of the prospective jurors in the trial of William Eugene Hall and Derrick Desmond Quintero, two escaped inmates charged with the first degree murder of Buford and Myrtle Vester.[2] The trial court and the lawyers questioned Mr. Bowker and the other jurors about their attitudes concerning the death penalty because the State was seeking the death penalty in the case. During voir dire, Mr. Bowker stated that he was a Christian and that he had been brought up to believe that the death penalty was wrong. He also stated that he could not set aside his personal opinions about the death penalty and that he could never impose the death penalty regardless of the law or the evidence. Based on these responses, the trial court excused Mr. Bowker from the jury. Mr. Bowker was one of sixteen jurors who were excused because their religious beliefs played a role in their refusal to consider imposing the death penalty. *State v. Hall*, *supra* note 2, 1997 WL 92080, at *18 n.7.

In December 1994, Ms. Wolf and Mr. Bowker filed a class action suit in the Circuit Court for Davidson County seeking declaratory relief that excluding persons from serving on juries in capital cases because of their religious opposition to the death penalty violated Tenn. Const. art. I, §§ 3, 4, 6, and 8 and Tenn. Const. art. XI, § 8. They also sought to enjoin using challenges for cause to exclude prospective jurors in capital cases whose religious beliefs prevent them from considering the death penalty. In support of their request for injunctive relief, Ms. Wolf and Mr. Bowker presented affidavits from Protestant, Roman Catholic, and Jewish leaders stating that personal opposition to the death penalty was a valid exercise of religious conscience. Several of these affiants also expressed their belief that excluding persons who oppose the death penalty on religious grounds from juries in capital cases penalized them for expressing their individual consciences. The trial court denied the application for declaratory and injunctive relief because the Tennessee Supreme Court had already determined in

---

[2]Messrs. Hall and Quintero were found guilty of first degree murder. They received the death penalty for the murder of Ms. Vester and a life sentence for the murder of Mr. Vester. *State v. Hall,* App. No. 01C01-9311-CC-00409, 1997 WL 92080, at *1 (Tenn. Crim. App. Mar. 5, 1997).

*State v. Jones,* 789 S.W.2d 545, 547 (Tenn. 1990) and *State v. Bobo,* 727 S.W.2d 945, 949 (Tenn. 1987) that excluding jurors who opposed the death penalty on religious grounds did not violate Tenn. Const. art. I, § 6.

## II.

The right to trial by jury secured by our state and federal constitutions necessarily contemplates that the jury will be unbiased and impartial. *Thiel v. Southern Pacific Co.,* 328 U.S. 217, 220, 66 S. Ct. 984, 985 (1946); *Ricketts v. Carter,* 918 S.W.2d 419, 421 (Tenn. 1996); *Durham v. State,* 182 Tenn. 577, 584, 188 S.W.2d 555, 558 (1945). In its constitutional sense, impartiality envisions not only freedom from jury bias against the defendant but also freedom from jury bias in the defendant's favor. *Swain v. Alabama,* 380 U.S. 202, 219-20, 85 S. Ct. 824, 835 (1965); *Hayes v. Missouri,* 120 U.S. 68, 70-71, 7 S. Ct. 350, 351 (1887); *Houston v. State,* 593 S.W.2d 267, 272 (Tenn. 1980), *rev'd on other grounds,* *State v. Brown,* 836 S.W.2d 530, 543 (Tenn. 1992); *Toombs v. State,* 197 Tenn. 229, 231-32, 270 S.W.2d 649, 650 (1954).

An impartial jury consists of jurors who will find the facts and conscientiously apply the law. *Buchanan v. Kentucky,* 483 U.S. 402, 417, 107 S. Ct. 2906, 2914 (1987); *Wainwright v. Witt,* 469 U.S. 412, 423, 105 S. Ct. 844, 851-52 (1985). To be considered impartial, a juror must be free of personal bias and must be indifferent and disinterested between the parties. *Eason v. State,* 65 Tenn. 466, 469 (1873). Unbiased jurors do not give free rein to their own biases or prejudices, *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 153, 114 S. Ct. 1419, 1434 (1994) (Kennedy, J., concurring), and are able to follow the trial court's instructions. *Lockett v. Ohio,* 438 U.S. 586, 596-97, 98 S. Ct. 2954, 2960 (1978).

The courts are not strangers to issues involving the exclusion of prospective jurors whose opposition to the death penalty affects their ability to follow the law and the instructions of the trial court. Up to this point, the litigation focused exclusively on the defendant's constitutional right to be tried by an impartial jury selected from a cross section of the community. It is now settled that a criminal defendant's constitutional rights are not violated by excusing prospective jurors

for cause when their personal beliefs concerning the death penalty would prevent or substantially impair their performance as a juror in accordance with their instructions and their oath. *Wainwright v. Witt,* 469 U.S. at 424, 105 S. Ct. at 852; *Adams v. Texas,* 448 U.S. 38, 45, 100 S. Ct. 2521, 2526 (1980); *State v. Hutchison,* 898 S.W.2d 161, 167 (Tenn. 1994); *State v. Alley,* 776 S.W.2d 506, 518 (Tenn. 1989).

This appeal implicates different constitutional rights. Instead of focusing on a criminal defendant's rights, it focuses on the constitutional rights of persons whose religious beliefs prevent or substantially impair their ability to consider imposing the death penalty. This right is of constitutional significance because providing all citizens with an opportunity to participate in the fair administration of justice is fundamental to our democratic system. *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. at 146, 114 S. Ct. at 1430; *Powers v. Ohio*, 499 U.S. 400, 407, 111 S. Ct. 1364, 1368-69 (1991); *Lockhart v. McCree,* 476 U.S. 162, 175, 106 S. Ct. 1758, 1765-66 (1986); *Woodson v. Porter Brown Limestone Co.,* 916 S.W.2d 896, 903 (Tenn. 1996).

We must construe our constitution as a whole and must harmonize and give effect to each of its provisions, *Patterson v. Washington County,* 136 Tenn. 60, 66, 188 S.W. 613, 614 (1916); *State ex rel. Witcher v. Bilbrey,* 878 S.W.2d 567, 575 (Tenn. Ct. App. 1994), and we should not permit the language of one provision to render another provision ineffective. *Vollmer v. City of Memphis,* 792 S.W.2d 446, 448 (Tenn. 1990). Accordingly, the contours of a prospective juror's right to serve on a jury should be consistent with those of a criminal defendant's right to a jury trial. These rights, after all, share a common purpose - to assure that juries are fairly chosen and impartial.

**III.**

Ms. Wolf and Mr. Bowker first assert that excluding them from jury service in capital cases because of their religiously motivated opposition to the death penalty violates Tenn. Const. art. I, § 3. They insist that the trial judges interfered with their right of conscience by excluding them from serving on the juries empaneled to try Mr. Dugger and Messrs. Hall and Quintero. We respectfully disagree. Excluding them from service on these juries did not unconstitutionally infringe on their constitutionally protected freedom of conscience.

Both Tenn. Const. art. I, § 3 and the First Amendment to the United States Constitution protect individual religious freedom. They guarantee to all the right "to entertain such notions respecting his [or her] relations to his [or her] Maker and the duties they impose as may be approved by his [or her] judgment and conscience." *Davis v. Beason,* 133 U.S. 333, 342, 10 S. Ct. 299, 300 (1890), *rev'd on other grounds*, *Romer v. Evans*, ___ U.S. ___, ___, 116 S. Ct. 1620, 1628 (1996). While religious beliefs are constitutionally protected, they are not superior to all other fundamental principles that bind society together. *Wisconsin v. Yoder,* 406 U.S. 205, 215-16, 92 S. Ct. 1526, 1533 (1972); *Reynolds v. United States,* 98 U.S. 145, 166-67 (1879).

While Tenn. Const. art. I, § 3 is similar to the First Amendment, *Carden v. Bland*, 199 Tenn. 665, 672, 288 S.W.2d 718, 721 (1956), it contains substantially stronger protections of religious freedom. *State ex rel. Swann v. Pack,* 527 S.W.2d 99, 107 (Tenn. 1975). Notwithstanding the breadth of this provision, the Tennessee Supreme Court, like the United States Supreme Court, has recognized that "[t]he law of intellectual and spiritual life is not the higher law, but must yield to the law of the land." *Landrith v. Hudgins,* 121 Tenn. 556, 658, 120 S.W. 783, 809 (1908) (quoting *In re Schnorr's Appeal,* 67 Pa. 138, 146-47 (1870)).

The struggle for religious liberty through the centuries has been an effort to accommodate the demands of the State to the conscience of the individual. *Girouard v. United States,* 328 U.S. 61, 68, 66 S. Ct. 826, 829 (1946). Both Tenn. Const. art. I, § 3 and the First Amendment embody our founding fathers' efforts to balance individual religious freedom, the rights of others, and all citizens' shared societal responsibilities. The courts maintain this equilibrium by

recognizing that religious freedom embodies two complementary concepts - the freedom to believe and the freedom to act. The freedom to believe is absolute; while the freedom to act is subject to reasonable control for the protection of others. *Cantwell v. Connecticut,* 310 U.S. 296, 303-04, 60 S. Ct. 900, 903 (1940); *State ex rel. Swann v. Pack,* 527 S.W.2d at 111; *Harden v. State,* 188 Tenn. 17, 25, 216 S.W.2d 708, 711 (1948); *Goodwin v. Metropolitan Bd. of Health,* 656 S.W.2d 383, 389-90 (Tenn. Ct. App. 1983).

Being excluded from service on a jury in a capital case does not infringe upon a person's religiously motivated opposition to the death penalty. These persons remain free to follow and to assert their beliefs. While excluding these persons from juries in capital cases affects their ability to translate their religious beliefs into action, Tenn. Const. art. I, § 3 does not prevent the State from controlling religiously motivated actions for the good of society. In light of the affirmative constitutional mandate to provide impartial juries in criminal cases, the State has an important interest in obtaining juries that do not contain members who, because of their religious beliefs, are unable to follow the law or the trial court's instructions. Thus, excluding prospective jurors who oppose the death penalty on religious grounds is not contrary to Tenn. Const. art. I, § 3.

## IV.

Ms. Wolf and Mr. Bowker also assert that questioning them concerning their religious beliefs with regard to the death penalty amounted to a religious test prohibited by Tenn. Const. art. I, § 6.[3] We disagree. All parties, including the State, are entitled to question prospective jurors to satisfy themselves that they will be impartial and unbiased. Ms. Wolf and Mr. Bowker were not excluded because of their religious beliefs but because they stated, in effect, that they could not be impartial and unbiased.

---

[3]Ms. Wolf and Mr. Bowker also rely on Tenn. Const. art. I, § 4 which prohibits using political or religious tests for "any office or public trust under this State." We do not find this section to be applicable because Tenn. Const. art. I, § 6 governs the qualifications of jurors.

Many of the early colonists came to America to escape religious persecution and discrimination. They understood "the extreme dangers as well as difficulties of connecting the civil power with religious opinions." 1 Joseph Story, *Commentaries on the Constitution of the United States* 459 (Boston, Little, Brown & Co. 1891) ("1 Story"). Two of the common manifestations of the entanglement of church and state were state-established churches and the use of religious tests to exclude religious minorities from public and political life.

Ironically, the same persons who had fled from religious persecution in England and Europe soon began engaging in the same conduct in the colonies. State-sponsored religion was commonplace by the time of the Revolutionary War, *Martin v. Beer Bd. for Dickson,* 908 S.W.2d 941, 948 n.9 (Tenn. Ct. App. 1995), and many colonies were using religious tests to impose burdens and disabilities of various kinds upon other religions depending largely upon what group happened to be politically strong enough to legislate in favor of their own beliefs. *Torcaso v. Watkins,* 367 U.S. 488, 489-91, 81 S. Ct. 1680, 1680-82 (1961); 2 James Kent, *Commentaries on American Law* *35-37; 2 Joseph Story, *Commentaries on the Constitution of the United States* 615-16 (Boston, Little, Brown & Co. 1891) ("2 Story"). The colonists responded to these new threats to individual religious liberty by including strong safeguards in their early state constitutions and bills of rights. Thirteen state constitutions currently contain proscriptions against the use of religious tests to qualify for jury service.[4]

Religious tests probe religious beliefs. *Torcaso v. Watkins,* 367 U.S. at 494, 81 S. Ct. 1683; *Paty v. McDaniel,* 547 S.W.2d 897, 907 (Tenn. 1977), *rev'd on other grounds,* 435 U.S. 618, 98 S. Ct. 1322 (1978). Their purpose was to define qualifications to hold public office or to participate in other important civic activities such as testifying as a witness or serving as a juror. These tests took many forms, including statutes restricting the right to hold public office to persons

---

[4]Ariz. Const. art. 2, § 12; Cal. Const. art. I, § 4; Md. Const. Declaration of Rights art. 36; Mo. Const. art. I, § 5; N.M. Const. art. VII, § 3; N.C. Const. art. I, § 26; N.D. Const. art. I, § 3; Or. Const. art. I, § 6; Tenn. Const. art. I, § 6; Utah Const. art. I, § 4; Wash. Const. art. I, § 11; W. Va. Const. art. 3, § 11; Wyo. Const. art. 1, § 18.

who had received Holy Communion during the preceding year,[5] statutes requiring public officials to take the Oath of Supremacy or to disavow the Doctrine of Transubstantiation,[6] constitutional provisions requiring holders of public office to declare their belief in the existence of God,[7] or constitutional disqualifications for public office of persons who broke the Sabbath or who have disavowed the tenets of a specific religious denomination.[8]

Notwithstanding the constitutional prohibitions against using political tests, the courts have repeatedly approved excluding from jury service persons whose religious beliefs affect their ability to be impartial. In an early decision upholding the exclusion of a Quaker from a capital case jury, Justice Story stated:

> To insist on a juror's sitting in a cause when he acknowledges himself to be under influences, no matter whether they arise from interest, from prejudices, or from religious opinions, which will prevent him from giving a true verdict according to law and evidence, would be to subvert the objects of a trial by jury, and to bring into disgrace and contempt, the proceedings of courts of justice.

*United States v. Cornell,* 25 Cas. 650, 655-56 (C.C.D. R.I. 1820) (No. 14,868). Our courts have consistently reached the same result, *State v. Smith,* 893 S.W.2d 908, 915-16 (Tenn. 1994); *Green v. State,* 147 Tenn. 299, 310-12, 247 S.W. 84, 87-88 (1922); *Ray v. State,* 108 Tenn. 282, 289-90, 67 S.W. 553, 555 (1902), as have the other state courts. *State v. Willoughby,* 892 P.2d 1319, 1335 (Ariz. 1995); *Smith v. Smith,* 46 P.2d 232, 233 (Cal. Dist. Ct. App. 1935); *State v. Sandles,* 740 S.W.2d 169, 178 (Mo. 1987); *State v. Leuch,* 88 P.2d 440, 442 (Wash. 1939).

---

[5] 2 Story, at 617-18.

[6] *Torcaso v. Watkins,* 367 U.S. at 409, 81 S. Ct. at 1681; 2 Story, at 617.

[7] *Torcaso v. Watkins,* 367 U.S. at 489, 81 S. Ct. at 1680.

[8] Constitution or Form of Government § 3, Proposed *Constitution of State of Frankland,* 1 Am. Hist. Mag. 48, 55 (1896). In the process of invalidating the Franchise Laws as an unconstitutional political test for jury service, the Tennessee Supreme Court noted that "[i]f a Legislature may restrict the qualification to a political test, it may to a religious one, and declare that none save members of a particular denomination shall be competent." *Gibbs v. State,* 50 Tenn. (3 Heisk.) 72, 77 (1871).

Tenn. Const. art. I, § 6 does not provide that potential jurors will be qualified to sit on a jury despite religious beliefs that prevent them from being impartial in a particular case. Accordingly, the Tennessee Supreme Court has concluded that examining a juror to ascertain possible religiously motivated bias is not an impermissible religious test under Tenn. Const. art. I, § 6. *State v. Jones,* 789 S.W.2d at 547; *State v. Bobo,* 727 S.W.2d at 949. More properly, Tenn. Const. art. I, § 6 is intended to prevent the State from excluding otherwise qualified persons from service on a jury solely because of their religious beliefs or lack of religious beliefs.

Both Ms. Wolf and Mr. Bowker stated that their religious beliefs would not permit them to find the facts and to apply the law in a capital case. Thus, the trial courts excluded them, not because of their religious beliefs but because their religious beliefs prevented or substantially impaired their ability, as jurors, to abide by their oaths and to follow the law and the trial court's instructions. Probing these jurors' religious beliefs to test their ability to be impartial did not violate Tenn. Const. art. I, § 6.

## V.

As a final matter, Ms. Wolf and Mr. Bowker assert that the trial courts violated Tenn. Const. art. I, § 8 and Tenn. Const. art. XI, § 8 by excluding them from the jury based on their religiously motivated opposition to the death penalty. We do not agree that the trial courts unconstitutionally discriminated against Ms. Wolf and Mr. Bowker solely because of their religious beliefs. The manner in which the trial courts granted the challenges for cause furthered the State's obligation to provide the parties with an impartial, unbiased jury.

Active discrimination during the selection process invites cynicism about the jury's impartiality. *Powers v. Ohio,* 499 U.S. at 412, 111 S. Ct. at 1371. Accordingly, individual jurors have a right to be subjected to nondiscriminatory jury selection procedures. *Georgia v. McCollum,* 505 U.S. 42, 48-50, 112 S. Ct. 2348, 2353-54 (1992); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 618, 111 S. Ct. 2077, 2081 (1991); *Woodson v. Porter Brown Limestone Co.,* 916

S.W.2d at 903. All persons chosen for jury service have the right not to be excluded because of presumed disqualifications based on discriminatory or stereotypical presumptions unrelated to their ability to serve as impartial jurors. *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. at 143-44, 114 S. Ct. at 1428.

The United States Supreme Court has held that persons whose religious beliefs prevent them from considering the death penalty are not a distinctive group for the purpose of determining whether a jury was chosen from a representative cross section of the community. *Buchanan v. Kentucky,* 483 U.S. 402, 415, 107 S. Ct. 2906, 2913 (1987); *Lockhart v. McCree,* 476 U.S. at 175-76, 106 S. Ct. at 1765-66. The Tennessee Supreme Court has reached a similar result, *State v. Harbison,* 704 S.W.2d 314, 318 (Tenn. 1986), as have other state courts. *Ex Parte Ford,* 515 So. 2d 48, 52-53 (Ala. 1987); *People v. Howard,* 824 P.2d 1315, 1327 (Cal. 1992); *Pope v. State,* 345 S.E.2d 831, 839 (Ga. 1986); *Stanford v. Commonwealth,* 734 S.W.2d 781, 785 (Ky. 1987); *State v. Young,* 853 P.2d 327, 343 (Utah 1993); *State v. Hughes,* 721 P.2d 902, 906-07 (Wash. 1986).

The public has a right to expect that juries in capital cases will not contain jurors who are unable or unwilling to follow the law. *Buchanan v. Kentucky,* 483 U.S. at 416, 107 S. Ct. at 2914. Rather than excluding persons for reasons unrelated to their ability to serve as jurors, a trial court is following its constitutional obligation to provide all parties with a fair and impartial jury when it excludes jurors who state that their religious beliefs will prevent or substantially impair their ability to apply the law to the facts of a particular case. Accordingly, the trial courts that excluded Ms. Wolf and Mr. Bowker from the capital case juries did not unconstitutionally discriminate against them because of their religious beliefs.

## VI.

In summary, we find that the practice of excluding from capital case juries persons whose religious beliefs prevent or substantially impair their ability to be impartial does not violate the jurors freedom of conscience under Tenn. Const. art. I, § 3. We also find that questioning a prospective juror to determine whether

their religious beliefs will prevent them from being impartial is not a religious test prohibited by Tenn. Const. art. I, § 6. Finally, we find that excluding prospective jurors who oppose the death penalty on religious grounds from capital case juries does not violate the prospective juror's equal protection rights under Tenn. Const. art. I, § 8 and Tenn. Const. art. XI, § 8.

We affirm the judgment and remand the case to the trial court for whatever other proceedings may be required. We also tax the costs of this appeal to Janet L. Wolf and Gerald S. Bowker and their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.

_____
SAMUEL L. LEWIS, JUDGE