ADOLPHO A. BIRCH, JR., J„
filed a concurring and dissenting opinion.

APPENDIX

(Excerpts from the Court of Criminal Appeals’ Decision)
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 11, 2003 Session
STATE OF TENNESSEE v. ROBERT L. LEACH, JR.
Appeal from the Criminal Court for Davidson County
No. 99-D-2508 J. Randall Wyatt, Judge
No. M2001-01421-CCA-R3-DD—
Filed August 25, 2003
The defendant, Robert L. Leach, Jr., was found guilty by a jury of two counts of *62 premeditated murder, two counts of felony murder, one count of aggravated rape, and one count of especially aggravated robbery. The felony murder convictions were merged into the premeditated murder convictions. The jury sentenced the defendant to death based upon the finding that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt. As to victim Sarah McBride, the jury found three aggravating circumstances: the defendant had previously been convicted of one or more violent felonies; the murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death; and the murder was knowingly committed by the defendant while committing or attempting to commit robbery or aggravated rape. As to victim Jean Poteet, the jury found the same three aggravating circumstances and the additional aggravating circumstance that the victim was seventy years of age or older or was particularly vulnerable due to a significant handicap or significant disability, physical or mental. The trial court sentenced the defendant to consecutive sentences of twenty-five years for the especially aggravated robbery and aggravated rape convictions. In this appeal, the defendant raises numerous issues relating to the sufficiency of the evidence, eviden-tiary rulings, jury instructions, the constitutionality of the death penalty, and the application of certain capital case procedures. We conclude that no harmful error exists, and we affirm the convictions and sentences. The case should be remanded, though, for correction of clerical errors by which the judgments for Counts 5 and 6 have respectively been switched to Counts 6 and 5.
Joseph M. TiptoN, J., delivered the opinion of the court, in which Joe G. Riley and Thomas T. Woodall, JJ., joined. Ross E. Alderman, District Public Defender; and Jeffrey A. DeVasher and C. Dawn Deaner (on appeal), and Laura C. Dykes and Amy D. Harwell (at trial), Assistant Public Defenders, for the appellant, Robert L. Leach, Jr.
Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Thomas B. Thurman, Deputy District Attorney General; and Kathy Morante and Katrin No-vak Miller, Assistant District Attorneys General, for the appellee, State of Tennessee.
OPINION
JOSEPH M. TIPTON, Judge.
[Deleted: Factual Background]
I. SUFFICIENCY OF EVIDENCE
[Deleted]
II. PHOTOGRAPHIC EVIDENCE
The defendant contends that the trial court abused its discretion in admitting three photographs of the deceased victims. The photographs at issue are Exhibits 6L, which depicts Sarah McBride lying on the bed where her body was found; 6M, which depicts a close-up view of the back of Sarah McBride’s head; and 6T, which depicts a close-up view of Jean Poteet’s head and back. The defendant claims that the photographic evidence of the crime scene and deceased victims was irrelevant, cumulative, highly prejudicial and erroneously admitted to inflame the passion of the jury. He asserts that oral testimony and diagrams presented by the state adequately conveyed to the jury any relevant aspects of the photographs.
The admissibility of relevant photographs of victims and the crime scene is within the sound discretion of the trial judge, and his or her ruling on admissibili *63 ty will not be disturbed on appeal absent a showing of an abuse of that discretion. State v. Carrruthers, 35 S.W.3d 516, 576-57 (Tenn.2000), cert. denied 533 U.S. 953, 121 S.Ct. 2600, 150 L.Ed.2d 757 (2001); State v. Banks, 564 S.W.2d 947, 949 (Tenn.1978); see also State v. Bigbee, 885 S.W.2d 797, 807 (Tenn.1994); State v. Van Tran, 864 S.W.2d 465, 477 (Tenn.1993), cert. denied 511 U.S. 1046, 114 S.Ct. 1577, 128 L.Ed.2d 220 (1994). As the Supreme Court stated in Carmthers, the modern trend is to vest more discretion in the trial judge’s rulings on admissibility. Carruthers, 35 S.W.3d at 577 (citing Banks, 564 S.W.2d at 949).
Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Tenn. R. Evid. 401. However, relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.” Tenn. R. Evid. 403. Prejudicial evidence is not excluded as a matter of law. Carruthers, 35 S.W.3d at 577 (citing State v. Gentry, 881 S.W.2d 1, 6 (Tenn.Crim.App.1993)). The court must still determine the relevance of the visual evidence and weigh its probative value against any undue prejudice. Id. The term “undue prejudice” has been defined as “[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.” Banks, 564 S.W.2d at 950 (quoting Fed. R.Evid. 403, explanatory note).
In Banks, the supreme court gave the trial courts guidance for determining the admissibility of relevant photographic evidence. A trial court should consider: the accuracy and clarity of the picture and its value as evidence; whether the picture depicts the body as it was found; the adequacy of testimonial evidence in relating the facts to the jury; and the need for the evidence to establish a 'prima facie case of guilt or to rebut the defendant’s contentions. Id. at 951. In the present case, all of the photographs at issue are accurate and clear, and they have significant evidentiary value. The photographs, especially 6L, accurately depict the bodies as they were found. Moreover, because the defendant was charged with first degree murder and aggravated rape, the state had to prove the elements of those offenses. With regard to the charge of first degree murder, the element of intent may be inferred from the manner and extent of the attack on the victim, see id. at 950, which is portrayed in the photographs. Testimonial evidence alone was insufficient in this case to explain the crime scene and the extent of the attacks on the victims.
The defendant argues that the photographs were cumulative to Dr. Levy’s testimony and, therefore, should have been excluded under Rule 403, Tenn. R. Evid. This court has held that photographs are not necessarily rendered inadmissible because they are cumulative of other evidence or because descriptive words could be used. Collins v. State, 506 S.W.2d 179, 185 (Tenn.Crim.App.1973). In the present case, the photographs were used to illustrate the nature of the crime scene, the positions of the victims’ bodies, and the cause of death during Dr. Levy’s testimony. The photographs were not cumulative to Dr. Levy’s testimony.
The defendant also argues that because he did not seek to contest the extent of the victims’ injuries described by Dr. Levy, the photographs should have been excluded. While it may be true that the defendant did not contest the extent of the victims’ injuries, he did contest the fact the *64 murders were committed with intent and premeditation.
The trial court, after a hearing, allowed the photographs at issue to be introduced as evidence. The trial court found that the state could introduce the photographs to prove the elements of the offenses and further found that the probative value of the photographs was not outweighed by the danger of unfair prejudice. We conclude that the trial court did not abuse its discretion in this regard.
III. VIDEOTAPE OF CRIME SCENE
In addition to challenging the admission of the three photographs at trial, the defendant contends that the trial court committed reversible error by allowing the introduction of a videotape of the crime scene. The defendant basically advances the same arguments with respect to this issue as he did with the challenged photographs: the probative value of the videotape was outweighed by the danger of unfair prejudice and it was cumulative of other evidence.
The admissibility of videotapes of crime scenes is governed by the same standards as that of photographs. After a review of the videotape, we do not believe that its potential for prejudice outweighs its probative value. The videotape is of short duration. It does not focus on the bodies of the victims. Instead, it goes through each room of the residence and portrays the crime scene. The use of the videotape was used by the state to establish the elements of intent and premeditation for the charge of first degree murder. Moreover, the videotape was used by the state to establish the elements of especially aggravated robbery. The admission of the videotape was used to establish the elements of the crimes charged, as allowed by Banks and its progeny. See Banks, 564 S.W.2d at 950.
Further, the defendant contends that the videotape was cumulative of the testimonial evidence, a diagram of the crime scene, and the photographs entered into evidence. While the videotape and the other evidence admitted in this case may have contained some of the same material, it was not error to admit the videotape. See Bigbee, 885 S.W.2d at 807 (holding that it was not error to admit a videotape of the crime scene although it depicted images similar to those of photographs also admitted). Each of the different forms of evidence admitted in this case served different purposes and were probative of the issues to be decided by the jury. We conclude that the trial court did not abuse its discretion in admitting the videotape into evidence. See id.; see also State v. Kelvin Anthony Lee, No. 02C01-9603-CC-00085, Lauderdale County, slip op. at 15, 1997 WL 686258 (Tenn.Crim.App. Nov. 5, 1997), app. denied (Tenn. Aug. 3, 1998).
Finally, the defendant argues that the videotape had limited probative value in this case because he did not contest the manner of the victims’ deaths nor his identity as the perpetrator. Although the defendant did not challenge these two aspects of the case, he did challenge the elements of the crimes for which he had been charged. As set forth above, the videotape was relevant and was used to establish the elements of the crimes for which he was charged.
IY. EVIDENCE TO DISCREDIT TESTIMONY OF JOSEPH WALKER
[Deleted]
V. SPECIAL JURY INSTRUCTION THAT ALL HOMICIDES ARE PRESUMED TO BE SECOND DEGREE MURDER
The defendant filed a motion requesting a special instruction to the jury that all *65 homicides are presumed to be second degree murder. The instruction stated:
Once a homicide has been established, it is presumed to be murder in the second degree, and the state bears the burden of proof on the issue of premeditation sufficient to elevate the offense to first degree murder.
The trial court denied the defendant’s request and instructed the jury on first degree murder as provided in T.P.I. § 7.01(b) (6th ed.2001).
A defendant has a constitutional right to a complete and correct charge of the law. State v. Teel) 793 S.W.2d 236, 249 (Tenn.1990), cert. denied 498 U.S. 1007, 111 S.Ct. 571, 112 L.Ed.2d 577 (1990). However, a trial court is not required to give a requested instruction if the substance of the instruction is covered in the general charge. State v. Zirkle, 910 S.W.2d 874, 892 (Tenn.Crim.App.1995). In ruling on a similar request for a jury instruction on the presumption of second degree murder, this court has previously stated:
[W]e acknowledge our supreme court’s observation in State v. Brown, 836 S.W.2d 530, 543 (Tenn.1992), that “[t]he law in Tennessee has long recognized that once [a] homicide has been established, it is presumed to be murder in the second degree.” However, the import of this presumption is that “[t]he state bears the burden of proof on the issue of premeditation ... sufficient to elevate the offense to first-degree murder.” Therefore, when a trial court’s charge omits the language of “presumption” but otherwise clearly informs the jury that the State carries the burden of proving each and every element of first degree premeditated murder beyond a reasonable doubt and also includes a correct and complete instruction on see-ond degree murder, a criminal defendant is not entitled to relief.
State v. Coulter, 67 S.W.3d 3, 68 (Tenn.Crim.App.2001) (citations omitted).
In the present case, the trial court fully, fairly, and accurately instructed the jury on the law. The pattern jury instruction informed the jury that the state carried the burden of proving the elements of first degree premeditated murder beyond a reasonable doubt. The defendant is not entitled to relief on this issue.
VI. TESTIMONY OF DORIANNE BROWN FOR CONTEXTUAL BACKGROUND
[Deleted]
VII. VICTIM IMPACT EVIDENCE
The defendant contends that the trial court erred by allowing the admission of victim impact evidence at the penalty phase of the trial. Specifically, he urges us to find that the introduction of victim impact testimony violated his right to due process under the Tennessee and United States Constitutions and his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Further, the defendant argues that victim impact testimony is irrelevant under the capital sentencing structure established by Tenn. Code Ann. § 39-13-204(g)(l) and State v. Nesbit, 978 S.W.2d 872, 892 (Tenn.1998), cert. denied 526 U.S. 1052, 119 S.Ct. 1359, 143 L.Ed.2d 520 (1999), and should be excluded. Specifically, he asserts that Tenn. Code Ann. § 39-13-204(g)(l) directs that once a jury decides that aggravating circumstances exist, and they outweigh any mitigating circumstances, the jury “shall” return a verdict of death. He asserts that under Nesbit, the jury is not permitted to consider the victim impact evidence until after finding at least one aggravating circumstance exists and that the aggravating *66 circumstance(s) outweigh any mitigating circumstances beyond a reasonable doubt. Therefore, the defendant claims that by the time the jury can properly consider victim impact testimony, the jury has lost its discretion in sentencing the defendant. Accordingly, the defendant contends that victim impact testimony has no role under the current capital sentencing structure and should be excluded.
Victim impact evidence has been declared constitutional by the United States Supreme Court and the Tennessee Supreme Court. Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); Nesbit, 978 S.W.2d at 889. We note that the victim impact testimony in this case was brief, consisting of three witnesses; unemotional; limited to providing a brief glimpse into the lives of victims Sarah McBride and Jean Poteet; and limited by explaining the emotional, psychological, and physical impact of the victims’ deaths on their families.
Furthermore, the argument advanced by the defendant that victim impact testimony is irrelevant and should be excluded under Tennessee’s current capital sentencing system, has been rejected by the supreme court. See State v. Reid, 91 S.W.3d 247, 282-83 (Tenn.2002) (holding that any contradiction between the statute and the Nesbit instruction inures to the benefit of the defendant). We conclude that this issue is without merit.
VIII. LIFE PHOTOGRAPHS OF VICTIMS
The defendant challenges the introduction of photographs of the victims before they were murdered during the victim impact testimony. He asserts that the photographs were irrelevant and, in the alternative, asserts that their probative value was outweighed by their prejudicial effect. The state counters that the photographs were relevant to provide a brief glimpse into the lives of the victims, as victim impact testimony is designed to do. See Nesbit, 978 S.W.2d at 889. The defendant cites State v. Dicks, 615 S.W.2d 126, 128 (Tenn.1981), cert. denied 454 U.S. 933, 102 S.Ct. 431, 70 L.Ed.2d 240 (1981). However, in Nesbit, 978 S.W.2d at 901-02, the supreme court adopted that portion of this court’s opinion which held that a photograph of the victim while alive was relevant to the state’s case in chief in proving that the person murdered was the same person named in the indictment. Based on this holding, the supreme court allowed the introduction of life photographs in Carruthers, 35 S.W.3d at 578. Moreover, the photographs did nothing more than provide a glimpse into the lives of the victims, as allowed under Nesbit, 978 S.W.2d at 889. We conclude that the defendant is not entitled to relief on this issue.
IX. TESTIMONY OF DR. LEVY AND AUTOPSY PHOTOGRAPHS AT PENALTY PHASE
The defendant contends that the trial court erred by allowing Dr. Levy to testify during the penalty phase of the trial and by allowing the introduction of autopsy photographs during Dr. Levy’s testimony. The defendant argues that Dr. Levy’s testimony and the photographs should have been excluded pursuant to Tennessee Rule of Evidence 403, as the evidence was cumulative and unfairly prejudicial. In this respect, he asserts that the testimony had little probative value at the penalty phase because Dr. Levy’s penalty phase testimony basically echoed his previous testimony.
The state responds that the testimony of Dr. Levy and the autopsy photographs were needed at the penalty phase to prove the existence of the aggravating circumstance that the murders were “especially *67 heinous, atrocious, or cruel in that [they] involved torture or serious physical abuse beyond that necessary to produce death.” Tenn.Code Ann. § 39 — 13—204(i)(5). In his testimony, Dr. Levy described the nature and extent of the injuries sustained by the victims before their respective deaths. This testimony was relevant and highly probative of the existence of torture and serious physical abuse, necessary elements of the “especially heinous, atrocious or cruel” aggravating circumstance. As the state asserts, although the autopsy photographs may have been unpleasant, they were illustrative of Dr. Levy’s testimony and highly relevant to the extent of abuse endured by the victims. Moreover, in a capital sentencing hearing, evidence that has “probative value on the issue of punishment may be received regardless of its admissibility under the rules of evidence.” Tenn.Code Ann. § 39-18-204(e); see State v. Hall, 8 S.W.3d 593, 602 (Tenn.1999), cert. denied 531 U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000) (holding that autopsy photographs were admissible in a capital sentencing hearing under the sentencing statute notwithstanding Rules 401 and 403 of the Tennessee Rules of Evidence). We conclude that the trial court did not abuse its discretion in allowing Dr. Levy to testify at the sentencing hearing or in allowing the introduction of the autopsy photographs.
X. CONSTITUTIONALITY OF THE TENNESSEE DEATH PENALTY STATUTE
The defendant asserts that the trial court erred in failing to declare Tennessee’s death penalty statute unconstitutional. All of the objections to the constitutionality of the death penalty statute that the defendant has asserted have been repeatedly rejected by the Tennessee Supreme Court. See Terry v. State, 46 S.W.3d 147, 169-71 (Tenn.2001), cert. denied 534 U.S. 1023, 122 S.Ct. 553, 151 L.Ed.2d 428 (2001). This issue is without merit.
XL USE OF “RELIGIOUS TESTS” DURING YOIR DIRE
The defendant contends that the removal for cause of those jurors who could not commit to the imposition of the death penalty based upon religious, moral or philosophical views violates article I, section 6 of the Tennessee Constitution. The supreme court affirmed this court’s holding in State v. Reid, that the exclusion of prospective jurors by a trial court because of their moral or religious based reluctance to impose the death is not error. 91 S.W.3d at 289-90. “In this regard, potential jurors are removed for cause not because of their religious opinion or affiliation but because the jurors are unable to view the proceedings impartially and perform their duties in accordance with the juror’s oath.” Id. at 290. Questioning of a juror with regard to the death penalty does not amount to a religious test. Id. (citing Wolf v. Sundquist, 955 S.W.2d 626, 631 (Tenn.Ct.App.1997), app. denied (Tenn.1997)). The defendant is not entitled to relief on this issue.
XII. USE OF THE FELONY MURDER AGGRAVATING CIRCUMSTANCE
The defendant argues that the trial court should not have allowed the state to pursue the death penalty based upon the felony murder aggravating circumstance because he was convicted of felony murder. The felony murder aggravating circumstance may be relied upon by the prosecution in seeking a death sentence when the defendant is found guilty of both premeditated murder and murder in the *68 perpetration of a robbery, and the trial court merges the dual convictions into one conviction of first degree murder. See, e.g., Reid, 91 S.W.8d at 306; Carter v. State, 958 S.W.2d 620, 624 (Tenn.1997). The defendant recognizes that other cases have upheld this practice by merging the premeditated and felony murder convictions. However, he claims the practice “violates the principles of death-sentencing as outlined by the Tennessee Supreme Court in Middlebrooks.” He also recognizes that the language of the (i)(7) aggravating circumstance has been amended by adding the “knowing” element. He simply requests that we adopt a position contrary to that currently held by the courts of this state. This we may not do.
XIII.USE OF THE HEINOUS, ATROCIOUS, OR CRUEL AGGRAVATING CIRCUMSTANCE
The defendant also contends that the state should have been prohibited from using the “heinous, atrocious or cruel” statutory aggravating circumstance. He argues that the language of the aggravating circumstance is “overly broad and fails to sufficiently channel the jury’s discretion and meaningfully narrow the class of death penalty eligible defendants.” The Tennessee Supreme Court has consistently upheld the constitutionality of the “heinous, atrocious or cruel” statutory aggravating circumstance. See Terry v. State, 46 S.W.3d 147 (Tenn.2001), cert. denied 534 U.S. 1023, 122 S.Ct. 553, 151 L.Ed.2d 428 (2001); State v. Middlebrooks, 995 S.W.2d 550, 555-56 (Tenn.1999); State v. Blanton, 975 S.W.2d 269, 280 (Tenn.1998), cert. denied 525 U.S. 1180, 119 S.Ct. 1118, 143 L.Ed.2d 113 (1999). Moreover, the supreme court has defined each term according to its ordinary and natural meaning. See State v. Williams, 690 S.W.2d 517, 527-30 (Tenn.1985). The trial court instructed the jury with the verbatim definitions prescribed by the supreme court for the terms heinous, atrocious and cruel. Accordingly, the use of the aggravating-factor was proper.
XIV.MOTION TO STRIKE NOTICE OF INTENT TO SEEK DEATH PENALTY PURSUANT TO AP-PRENDIV. NEW JERSEY
[Deleted]
XV.PROPORTIONALITY REVIEW [Deleted]
CONCLUSION
Pursuant to Tenn.Code Ann. § 39 — 13— 206(c)(l)(A-D), we have considered the entire record and conclude that the sentence of death has not been imposed arbitrarily, that the evidence supports the jury’s finding of the statutory aggravating circumstances, that the evidence supports the jury’s finding that the aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt, and that the sentence is not disproportionate. We have also reviewed all issues raised by the defendant and have found no reversible error. However, we note that the judgment referring to Count 5 is actually for the aggravated rape conviction in Count 6 and that the judgment referring to Count 6 is actually for the especially aggravated robbery conviction in Count 5. The case should be remanded in order that the trial court may correct these clerical errors. In all other respects, the judgments of conviction are affirmed.
ADOLPHO A. BIRCH, JR., J., concurring and dissenting.
I concur in the conclusion of the majority that Leach’s convictions should be affirmed. As to the sentences of death, however, I continue to adhere to my views that the comparative proportionality review protocol currently embraced by the *69 majority is inadequate to shield defendants from the arbitrary and disproportionate imposition of the death penalty. See Tenn. Code Ann. § 39-13-206(c)(1)(D) (1995 Supp.). I have repeatedly expressed my displeasure with the current protocol since the time of its adoption in State v. Bland, 958 S.W.2d 651 (Tenn.1997). See State v. Holton, 126 S.W.3d 845, 872 (Tenn.2004) (Birch, J., concurring and dissenting); State v. Davidson, 121 S.W.3d 600, 629-36 (Tenn.2003) (Birch, J., dissenting); State v. Carter, 114 S.W.3d 895, 910-11 (Tenn.2003) (Birch, J., dissenting); State v. Reid, 91 S.W.3d 247, 288-89 (Tenn.2002) (Birch, J., concurring and dissenting); State v. Austin, 87 S.W.3d 447, 467-68 (Tenn.2002) (Birch, J., dissenting); State v. Stevens, 78 S.W.3d 817, 852 (Tenn.2002) (Birch, J., concurring and dissenting); State v. McKinney, 74 S.W.3d 291, 320-22 (Tenn.2002) (Birch, J., concurring and dissenting); State v. Bane, 57 S.W.3d 411, 431-32 (Tenn.2001) (Birch, J., concurring and dissenting); State v. Stout, 46 S.W.3d 689, 720 (Tenn.2001) (Birch, J., concurring and dissenting); Terry v. State, 46 S.W.3d 147, 167 (Tenn.2001) (Birch, J., dissenting); State v. Sims, 45 S.W.3d 1, 23-24 (Tenn. 2001) (Birch, J., concurring and dissenting); State v. Keen, 31 S.W.3d 196, 233-34 (Tenn.2000) (Birch, J., dissenting); State v. Chalmers, 28 S.W.3d 913, 920-25 (Tenn. 2000) (Birch, J., concurring and dissenting); State v. Bland, 958 S.W.2d at 679 (Birch, J., concurring and dissenting). As previously discussed, I believe that the three basic problems with the current proportionality analysis are that: (1) the proportionality test is overbroad,[1] (2) the pool of cases used for comparison is inadequate,[2] and (3) review is too subjective.[3] In my view, these flaws undermine the reliability of the current proportionality protocol. See State v. Godsey, 60 S.W.3d at 793-800 (Birch, J., concurring and dissenting). Accordingly, I respectfully dissent from that portion of the majority opinion affirming the imposition of the death penalty in this case.

. I have urged adopting a protocol in which each case would be compared to factually similar cases in which either a life sentence or capital punishment was imposed to determine whether the case is more consistent with "life” cases or "death” cases. See State v. McKinney, 74 S.W.3d at 321 (Birch, J., concurring and dissenting). The current protocol allows a finding proportionality if the case is similar to existing death penalty cases. In other words, a case is disproportionate only if the case under review "is plainly lacking in circumstances consistent with those in similar cases in which the death penalty has been imposed.” Bland, 958 S.W.2d at 665 (emphasis added).

. In my view, excluding from comparison that group of cases in which the State did not seek the death penalty, or in which no capital sentencing hearing was held, frustrates any meaningful comparison for proportionality purposes. See Bland, 958 S.W.2d at 679 (Birch, J., dissenting).

. As I stated in my concurring/dissenting opinion in State v. Godsey, "[t]he scope of the analysis employed by the majority appears to be rather amorphous and undefined — expanding, contracting, and shifting as the analysis moves from case to case.” 60 S.W.3d 759, 797 (Tenn.2001)(Birch, J., concurring and dissenting).